**MAYER BROWN LLP**
Jennifer M. Rosa
  *jrosa@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

Dale J. Giali (*pro hac vice* pending)
  *dgiali@mayerbrown.com*
Keri E. Borders (*pro hac vice* pending)
  *kborders@mayerbrown.com*
350 S. Grand Ave., 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

*Counsel for Defendants Nestlé USA, Inc.,*
*Ferrara Candy Company, and Ferrero U.S.A., Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGAN IGLESIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ USA, INC., et al.,<br><br>Defendants. | Civil Action No. 3:20-cv-05971-BRM-DEA |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................1

II.   BACKGROUND ....................................................................4

    A.   Defendants And The Challenged Products ...........................4

    B.   Federal Regulation Of Slack-Fill .........................................4

    C.   Plaintiffs' Theory Of Deception ...........................................5

III.  ARGUMENT.........................................................................8

    A.   Legal Standard For Motion To Dismiss................................8

    B.   Plaintiffs Fail To Allege Personal Jurisdiction Over Nestlé And
       Ferrara Regarding The Claims Of Out-Of-State Plaintiffs .................10

    C.   As a Matter of Law, The Reasonable Consumer Would Not Be
       Deceived By The Alleged Slack-Fill In The Challenged
       Products ....................................................................13

        1.   Reasonable Consumers Are Not Deceived By Slack-Fill ........14

        2.   Reasonable Consumers Are Not Deceived Because The
           Label Declares Exactly How Much Candy Is In The Box .......16

    D.   Plaintiffs Fail To Plausibly Allege Injury Or Ascertainable
       Loss..........................................................................21

    E.   Plaintiffs' Claims Are Not Plead With Particularity...........................24

    F.   Plaintiffs' Common Law Claims Should Be Dismissed....................27

        1.   Unjust Enrichment ..................................................28

        2.   Fraud and Intentional Misrepresentation .................................30

        3.   Negligent Misrepresentation.....................................31

        4.   Breach Of Implied Warranty ...................................32

        5.   Breach Of Express Warranty ...................................33

    G.   Plaintiffs Lack Standing to Seek Injunctive Relief..........................34

IV.   CONCLUSION......................................................................35


    Appendix A – Consumer Protection Statutes Elements................36

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alce v. Wise Foods, Inc.*,
2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018)..............................................15, 19

*Alin v. Am. Honda Motor Co.*,
2010 WL 1372308 (D.N.J. Mar. 31, 2010) ......................................................29

*Anders v. Hyundai Motor Am. Corp.*,
407 S.E.2d 618 (N.C. Ct. App. 1991)..............................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................9

*In re Avandia Mktg. Sales Practices & Prod. Liab. Litig.*,
588 F. App'x 171 (3d Cir. 2014) ......................................................................7

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) ..........................................................................14

*Benitez v. JMC Recycling Sys., Ltd.*,
97 F. Supp. 3d 576 (D.N.J. 2015).....................................................................9

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d. Cir. 2020) ..........................................................................34

*Blankenship v. Pushpin Holdings, LLC*,
157 F. Supp. 3d 788 (N.D. Ill. 2016)...............................................................39

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017)....................................................................................10

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017).......................................................................11, 12, 13

*Buonasera v. The Honest Co.*,
208 F. Supp. 3d 555 (S.D.N.Y. 2016) .............................................................29

*Burrell v. Pacifica Solevita, LLC*,
2018 WL 3620483 (D. Nev. July 27, 2018) ....................................................26

# TABLE OF AUTHORITIES

**Page(s)**

*Bush v. Mondelez Int'l, Inc.*,
2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) .....................................................18

*Bush v. Mondelez Int'l. Inc.*,
2016 WL 7324990 (N.D. Cal. Dec. 16, 2016)........................................17, 18, 19

*Buso v. ACH Food Companies, Inc.*,
2020 WL 1929024 (S.D. Cal. Apr. 20, 2020) ...................................................20

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) .........................................................................23, 24

*CBD & Sons, Ltd. v. Setteducati*,
2019 WL 396982 (D.N.J. Jan. 31, 2019)............................................................31

*In re Cheerios Mktg. & Sales Practices Litig.*,
2012 WL 3952069 (D.N.J. Sept. 10, 2012).................................................23, 28

*Chernus v. Logitech, Inc.*,
2018 WL 1981481 (D.N.J. Apr. 27, 2018).................................................10, 12

*Christmas v. Nationwide Mut. Ins. Co.*,
30 F. Supp. 3d 435 (E.D.N.C. 2014) ..................................................................39

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................................................22

*Cooper v. Samsung Elecs. Am., Inc.*,
2008 WL 4513924 (D.N.J. Sept. 30, 2008) ........................................................29

*Crozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012)......................................................................32

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................10, 11

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
2002 WL 31453789 (S.D.N.Y. Oct. 31, 2002)...................................................31

*Daniel v. Mondelez Int'l. Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..........................................................16, 19

# TABLE OF AUTHORITIES

**Page(s)**

*Daniel v. Tootsie Roll, Indus., LLC*,
   2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018)......................................................18

*Denny v. Ford Motor Co.*,
   87 N.Y.2d 248 (1995).........................................................................................32

*Dzielak v. Whirlpool Corp.*,
   2019 WL 6607220 (D.N.J. Dec. 5, 2019)...........................................................37

*Ealey v. Benjigate Estates, LLC*,
   2013 WL 6409987 (E.D. Mich. Dec. 9, 2013)...............................................21, 38

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..................................................................14, 15, 17

*Eromon v. Grand Auto Sales, Inc.*,
   351 F. Supp. 2d 825 (N.D. Ill. 2004)..................................................................25

*Fermin v. Pfizer Inc.*,
   215 F. Supp. 3d 209 (E.D.N.Y. 2016) ...........................................................18, 19

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   2010 WL 2813788 (D.N.J. July 9, 2010) ............................................................33

*Franulovic v. Coca Cola Co.*,
   2007 WL 3166953 (D.N.J. Oct. 25, 2007) ..........................................................23

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ...............................................................................25

*Friedman v. Maspeth Fed. Loan & Sav. Ass'n*,
   30 F. Supp. 3d 183 (E.D.N.Y. 2014) .............................................................36, 37

*Gavron v. Weather Shield Mfg., Inc.*,
   819 F. Supp. 2d 1297 (S.D. Fla. 2011)...............................................................37

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................................38

*Green v. SweetWorks Confections, LLC*,
   2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019)......................................................19

iv

# TABLE OF AUTHORITIES

**Page(s)**

*Greene v. Gerber Prods. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ...................................................29

*Hawkins v. UGI Corp.*,
  2016 WL 2595990 (C.D. Cal. May 4, 2016) .....................................19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)..........................................................................11

*Hemy v. Perdue Farms, Inc.*,
  2011 WL 6002463 (D.N.J. Nov. 30, 2011) ........................................33

*Henhaffer v. Simeone & Raynor, LLC*,
  2016 WL 6305939 (D.N.J. Oct. 27, 2016) ...........................................9

*Himes v. Brown & Co. Secs. Corp.*,
  518 So. 2d 937 (Fla. Dist. Ct. App. 1987)..........................................21

*Hoffman v. Cogent Sols. Grp.*,
  2013 WL 6623890 (D.N.J. Dec. 16, 2013)..........................................33

*Horowitz v. AT&T Inc.*,
  2018 WL 1942525 (D.N.J. Apr. 25, 2018)..........................................12

*Hu v. Iovate Health Scis. U.S.A. Inc.*,
  2018 WL 4954105 (S.D.N.Y. Oct. 12, 2018)......................................19

*Hughes v. Panasonic Consumer Elecs. Co.*,
  2011 WL 2976839 (D.N.J. July 21, 2011) ..........................................32

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015)....................................................39

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).........................21, 25, 31

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011)..........................................................................11

*Jackson v. Gen. Mills, Inc.*,
  2019 WL 4599845 (S.D. Cal. Sept. 23, 2019)....................................27

# TABLE OF AUTHORITIES

Page(s)

*Santomenno ex rel. John Hancock Tr. v.*
*John Hancock Life Ins. Co. (U.S.A)*,
768 F.3d 284 (3d Cir. 2014) ................................................................7

*Jones v. Zearfoss*,
456 S.W.3d 618 (Tex. App. 2015) ......................................................40

*Kacocha v. Nestle Purina Petcare Co.*,
2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ......................................7

*Kennard v. Lamb Weston Holdings, Inc.*,
2019 WL 1586022 (N.D. Cal. Apr. 12, 2019) ...............................15, 20

*Laney v. Am. Standard Cos.*,
2010 WL 3810637 (D.N.J. Sept. 23, 2010) ........................................29

*Lannin v. NRT Title Agency, LLC*,
2019 WL 4055389 (D.N.J. Aug. 27, 2019) .........................................26

*Llado-Carreno v. Guidant Corp.*,
2011 WL 705403 (S.D. Fla. Feb. 22, 2011) .......................................37

*Luna v. Am. Airlines*,
676 F. Supp. 2d 192 (S.D.N.Y. 2009) ................................................32

*Machulsky v. Hall*,
210 F. Supp. 2d 531 (D.N.J. 2002) ....................................................10

*Martinez-Leander v. Wellnx Life Scis., Inc.*
2017 WL 2616918 (C.D. Cal. Mar. 6, 2017) ......................................19

*Mason v. Coca-Cola Co.*,
2010 WL 2674445 (D.N.J. June 30, 2010) .........................................28

*Mason v. Coca-Cola Co.*,
774 F. Supp. 2d 699 (D.N.J. 2011) ...............................................30, 31

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .............................................................27

*Miller v. Samsung Elecs. Am. Inc.*,
2016 WL 6806331 (D.N.J. Nov. 16, 2016) .........................................34

# TABLE OF AUTHORITIES

**Page(s)**

*Morano v. BMW of N. Am., LLC*,
928 F. Supp. 2d 826 (D.N.J. 2013) .................................................................36

*Morrison v. Barcel USA*, LLC,
2019 WL 95477 (S.D.N.Y. Jan. 2, 2019) ....................................................19, 27

*N.J. Citizen Action v. Schering-Plough Corp.*,
842 A.2d 174 (2003) ........................................................................................36

*Nationwide Mut. Ins. Co. v. Caris*,
170 F. Supp. 3d 740 (D.N.J. 2016) .................................................................36

*Neuss v. Rubi Rose, L.L.C.*,
2018 WL 445432 (D.N.J. Jan. 16, 2018)........................................................24

*Pa. Prison Soc'y v. Cortes*,
508 F.3d 156 (3d Cir. 2007) ............................................................................34

*Panell v. O'Brien*,
2006 WL 2466858 (D.N.J. Aug. 24, 2006) ....................................................30

*Pappalardo v. Combat Sports, Inc.*,
2011 WL 6756949 (D.N.J. Dec. 23, 2011)......................................................32

*Pearce v. Am. Def. Life Ins. Co.*,
343 S.E.2d 174 (N.C. 1986)..............................................................................21

*Peruto v. TimberTech Ltd.*,
126 F. Supp. 3d 447 (D.N.J. 2015) ...................................................................7

*Pfizer Inc. v. Sachs*,
652 F. Supp. 2d 512 (S.D.N.Y. 2009) ..............................................................37

*Phillips v. Cnty of Alleghany*,
515 F.3d 224 (3d Cir. 2008) ..............................................................................9

*Ponzio v. Mercedes-Benz USA, LLC*,
2020 WL 1183733 (D.N.J. Mar. 11, 2020) ......................................................12

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) ..............................................................29

## TABLE OF AUTHORITIES

**Page(s)**

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) .................................................................21

*Robinson v. Hornell Brewing Co.*,
2012 WL 1232188 (D.N.J. Apr. 11, 2012).........................................34

*SAT Agiyar, LLC v. 7-Eleven, Inc.*,
2020 WL 3546821 (D.N.J. June 30, 2020).........................................24

*Smajlaj v. Campbell Soup Co.*,
782 F. Supp. 2d 84 (D.N.J. 2011).......................................................23

*Solum v. Certainteed Corp.*,
147 F. Supp. 3d 404 (E.D.N.C. 2015) ................................................40

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019)..................................................21

*Stranger v. APP Pharm., LLC*,
2010 WL 4941451 (D.N.J. Nov. 30, 2010) ........................................33

*Suddreth v. Mercedes-Benz, LLC*,
2011 WL 5240965 (D.N.J. Oct. 31, 2011) .........................................28

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ...............................................................25

*Thiedemann v. Mercedes-Benz USA, LLC*,
872 A.2d 783 (N.J. 2005) .............................................................21, 23

*Thorner v. Fleetwood*,
2002 WL 1998285 (N.D. Ill. Aug. 28, 2002) ....................................32

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*,
117 F. Supp. 3d 722 (M.D.N.C. 2015) ...............................................40

*Torres-Hernandez v. CVT Prepaid Sols., Inc.*,
2008 WL 5381227 (D.N.J. Dec. 17, 2008)....................................25, 28

*United States v. 116 Boxes of Arden Assorted Candy Drops*,
80 F. Supp. 911 (D. Mass. 1948).................................................14, 15

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. 174 Cases of Delson Thin Mints*,
180 F. Supp. 863 (D.N.J. 1960) ............................................................ 14

*United States v. Cataldo*,
157 F.2d 802 (1st Cir. 1946) ................................................................ 14

*Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*,
346 F. Supp. 3d 880 (N.D. Tex. 2018) ................................................. 40

*Washington v. Hyatt Hotels Corp.*,
2020 WL 3058118 (N.D. Ill. June 9, 2020) ......................................... 39

*Weiner v. Snapple Beverage Corp.*,
2011 WL 196930 (S.D.N.Y. Jan. 21, 2011) ......................................... 22

*Wurtzburger v. Ky. Fried Chicken*,
2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ...................................... 19

*Zlotnick v. Premier Sales Grp.*,
480 F.3d 1281 (11th Cir. 2007) ........................................................... 37

**Statutes**

21 U.S.C. § 343 ..................................................................................... 4, 5

21 U.S.C. § 343-1 ..................................................................................... 5

815 Ill. Comp. Stat. Ann. 505/1 ............................................................ 39

Fla. Stat. § 501.201 ............................................................................... 37

Mich. Comp. Laws Ann. § 445.901 ....................................................... 38

Mich. Comp. Laws Ann. § 445.903 ....................................................... 38

N.J. Stat. Ann. § 12A:2–313 ................................................................. 34

N.J. Stat. Ann. § 56:8-1 ........................................................................ 36

N.Y. Gen. Bus. Law § 349 ..................................................................... 36

N.Y. Gen. Bus. Law § 350 ..................................................................... 36

## TABLE OF AUTHORITIES

**Page(s)**

N.C. Gen. Stat. Ann. § 75-1 .........................................................................................39

Tex. Bus. & Com. Code § 17.41 ...................................................................................40

### Other Authorities

21 C.F.R. § 100.100 ................................................................................................4, 5

Fed. R. Civ. P. 8 ....................................................................................................2, 26

Fed. R. Civ. P. 9 ................................................................................................*passim*

Fed. R. Civ. P. 12 ....................................................................................................10

## I.  <u>INTRODUCTION</u>

Nine consumers from seven different states allege they purchased boxes of candy from defendants Nestlé USA, Inc. ("Nestlé"), Ferrara Candy Company ("Ferrara"), and Ferrero U.S.A., Inc. ("Ferrero"). They filed this multi-state consumer class action lawsuit because—based on the shape and size of the box—they expected more candy. When the candy was not, in their words, "full to the top," they felt deceived and this litigation followed. As demonstrated immediately below and at p. 7, *infra* (*see also* n.2, *infra*), the label clearly states the amount of candy in the box through several federally mandated objective statements (*e.g.*, "3.5 OZ," "99.2 g," and "about" two "¼ cup" "servings" of Raisinets).




Nevertheless, plaintiffs claim they simply had no idea the candy boxes could have empty space ("slack-fill") and that the boxes should have been full.

1

Plaintiffs' complaint fails, as a matter of law, for the following reasons:

*First*, plaintiffs fail to show that this Court has personal jurisdiction over the two non-New Jersey defendants, Nestlé and Ferrara, as to the claims of the non-New Jersey plaintiffs. Neither defendant is headquartered, nor has its principal place of business, in New Jersey. And any alleged involvement of those two defendants in the non-New Jersey plaintiffs' allegations has nothing to do with New Jersey.

*Second*, plaintiffs cannot plausibly maintain that they have been deceived. Plaintiffs provide no plausible explanation as to how they are (or how a reasonable consumer would be) unaware of the existence of slack-fill in packaged foods or how or why they or a reasonable consumer would rely on guesstimates of product quantity based on the shape and size of the box instead of the objective contents statements right on the box (*see* p. 1, *supra*, p. 7, *infra*). Accordingly, plaintiffs' claims do not meet the minimum threshold of Fed. R. Civ. P. 8 and the *Iqbal*/*Twombly* plausibility requirement and should be dismissed.

*Third,* the first amended complaint ("FAC") fails to sufficiently allege that plaintiffs suffered any injury or ascertainable loss. Vague allegations that plaintiffs paid a "premium" for the candy are insufficient to meet the pleading requirements of both their statutory and common law claims.

2

*Fourth*, the FAC—premised as it is on several state consumer protection laws and related common law actions—sounds in fraud and thus is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Yet plaintiffs fail to meet even the most basic requirements of alleging the when, where, and price of their purchases. Plaintiffs' failure to do so is by no means an oversight; since alleging the specifics of their purchases would expose the shortcomings of their allegations. Rule 9 does not permit strategic attempts to evade the Court's analysis of the sufficiency of their pleadings.

*Fifth*, plaintiffs' common law claims fail for various *sui generis* reasons. For example—and conclusory, non-plausible allegations aside—plaintiffs cannot state a claim for breach of warranty of merchantability for boxes of *consumable* candy. Nor can plaintiffs maintain a standalone unjust enrichment claim in the face of the defects in their other claims (which lack the requisite particularity and depend on the buying habits of an unreasonable consumer).

*Finally*, plaintiffs do not have standing to seek injunctive relief. If they weren't aware before, plaintiffs are now well aware of the amount of candy in the box, know exactly where the objective contents statements are and the information the statements provide, and cannot be further deceived.

For these reasons, and as more fully set forth below, the FAC should be dismissed.

## II.    BACKGROUND

### A.    Defendants And The Challenged Products

The challenged products are various kinds of candy products sold in concession style boxes: Raisinets, Butterfinger Bites, Buncha Crunch, Sno Caps, Toll House Morsels, Gobstopper, Nerds, Runts, Spree, and SweeTarts (the "Products"). FAC at p. 2 (introductory paragraph).

With no factual support, plaintiffs lump three separate companies (Nestlé, Ferrara, and Ferrero) together and—without factual allegations—insinuate that all three simultaneously manufactured and distributed all of the Products. But that's not the case. Nestlé manufactured and distributed all of the challenged brands until March 31, 2018, at which point (in a transaction that plaintiffs' counsel is well aware of), it sold the products, with the sugar-based candy (Gobstopper, Nerds, Runts, Spree, and SweeTarts) controlled by Ferrara and the chocolate-based products (Raisinets, Butterfinger Bites, Buncha Crunch, and Sno Caps) controlled by Ferrero. Nestlé maintained the Toll House morsels product, but that product was discontinued years before this lawsuit was filed.

### B.    Federal Regulation Of Slack-Fill

Food and its packaging are among the most pervasively regulated consumer products. Relevant here, slack-fill in food packages is regulated by the Food & Drug Administration ("FDA") through the federal Food Drug & Cosmetic Act ("FDCA"). *See* 21 U.S.C. § 343(d); 21 C.F.R. § 100.100. Pursuant to FDA

regulations, slack-fill in food packages is permitted (and not misleading) if it fulfills any one of FDA's six enumerated functional purposes, including that it can't easily be avoided. 21 C.F.R. § 100.100(a)(1)-(6).[1] If the slack-fill does not meet one of the enumerated purposes, it is considered nonfunctional and, therefore, misleading or in violation of FDA regulations. *Id.* There is, however, no private right of action under FDA's slack-fill regulations. Moreover, the FDCA expressly preempts state requirements on slack-fill that are not identical to FDA's slack-fill regulations. 21 U.S.C. § 343-1(a)(4) & 21 U.S.C. § 343(d).

Here, plaintiffs bring claims under various state consumer protection laws and unspecified state common law.

### C.   <u>Plaintiffs' Theory Of Deception</u>

Plaintiffs allege that they were deceived by the Products because the boxes were not full to the top with candy. "The size of each box leads the reasonable consumer to believe he or she is purchasing a box *full* of candy product when, in reality, what he or she actually receives is about one-third to one-half less than what

---

[1] The six enumerated functional purposes for slack-fill under the federal regulations are: (1) protection of the contents of the package; (2) requirements of the machines used for enclosing the contents in such package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function; (5) the fact that product is packaged in a reusable or gift container; and (6) inability to increase level of fill or to further reduce the size of the package.

is represented by the size of the box." FAC ¶¶ 23 (emphasis added); 66, 101, 107, 119, 121, 125, 158, 161, 167, 178, 181.

Plaintiffs claim that neither they nor reasonable consumers would understand how much candy was in the box based on the label statements and instead would (if the amount was material to them) rely on their own guesstimate of the amount based on the shape and size of the box. *Id*. ¶¶ 27, 28. Separately, plaintiffs allege that the slack-fill was *nonfunctional* because it did not fulfill any of FDA's six enumerated functional purposes for slack-fill. *See* FAC ¶¶ 2, 64(d).

Each of the plaintiffs alleges they would not have purchased the Products if they knew they were not filled to the top with candy. *See, e.g.*, FAC ¶¶ 1-9 (pages 15-20), 31, 84, 111, 125, 138, 148, 163, 176.

Significantly, and though they claim not to have relied upon them, plaintiffs do not dispute that (i) the candy they purchased provided *multiple objective statements* right on the box detailing the amount of product, as pictured on page 1, *supra*, and on the next page,[2] or (ii) the boxes contained the amount of candy stated on the box. *See* FAC ¶¶ 27-29.

---

[2] The pictures on the next page and at page 1 (as well as those attached to the declaration of Dale J. Giali) provide clearer images, the back panel, and enlargements of the exact same labels depicted at pages 3-5 and 7-10 of the FAC. Giali Decl., Exs. 1-7. It is appropriate for the Court to review these pictures as part of its assessment of the legal sufficiency of the FAC. "[T]he court may consider



Plaintiffs are nine consumers who, at different times and in different states, allege that they purchased one or more of the Products:

- Plaintiff Iglesia is a New Jersey resident who allegedly purchased Raisinets at a New Jersey Albertsons in 2018 (FAC at 15, ¶ 1);

- Plaintiff Fertel is a New York resident who allegedly purchased Buncha Crunch, Raisinets, Nerds, and Butterfinger Bites at Wegmans, Tops, and

---

documents that the defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and central to plaintiff's claim." *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 454 n.3 (D.N.J. 2015); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 291 (3d Cir. 2014) (same); *see also In re Avandia Mktg. Sales Practices & Prod. Liab. Litig.*, 588 F. App'x 171, 174 n.14 (3d Cir. 2014) (taking judicial notice of the content of publicly available labels for diabetes drugs, which were "explicitly refer[red]" to in the complaint); *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *12 (S.D.N.Y. Aug. 12, 2016) (taking judicial notice of packaging for dog treats because it was incorporated by reference and "discusse[d] at length" in the complaint).

Walmart in 2017 and 2018 in New York (FAC at 16, ¶ 2);

- Plaintiff Rosenberg is a New York resident who allegedly purchased Raisinets at a New York Albertsons in 2018 (FAC at 16, ¶ 3);

- Plaintiff Yd is a New York resident who allegedly purchased Raisinets at a New York Albertsons in 2017 (FAC at 17, ¶ 4);

- Plaintiff Tatkow is a Florida resident who allegedly purchased Butterfinger Bites at a Cinemark theater in Florida in 2018 (FAC at 17, ¶ 5);

- Plaintiff Maxwell is a Michigan resident who allegedly purchased Runts, Gobstopper, and Spree at a Michigan Walmart in 2018 (FAC at 18, ¶ 6);

- Plaintiff Debeliso is an Illinois resident who allegedly purchased SweeTarts at an Illinois Target in 2018 (FAC at 18, ¶ 7);

- Plaintiff Barter is a North Carolina resident who allegedly purchased SnoCaps and "Tollhouse" at a North Carolina Walmart in 2018 (FAC at 19, ¶ 8); and

- Plaintiff Ferguson is a Texas resident who allegedly purchased SweeTarts and Nerds at a Texas Walmart in 2019 (FAC at 19, ¶ 9).

## III.  <u>ARGUMENT</u>

### A.  <u>Legal Standard For Motion To Dismiss</u>

A complaint should be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint meets this test only if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that makes "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.* Moreover, on a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Instead, "the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth," and *exclude* those allegations in the analysis of the complaint's viability. *Henhaffer v. Simeone & Raynor, LLC*, 2016 WL 6305939, at *2 (D.N.J. Oct. 27, 2016) (internal quotation marks omitted). The Court should then consider whether the "well-pleaded factual allegations" that remain, if any, "plausibly give rise to an entitlement for relief" given the legal elements of the claims pleaded. *Id.* Ultimately, to survive a motion to dismiss, a plaintiff must have pleaded "enough factual matter (taken as true) to suggest the required elements" of the claim. *Phillips v. Cnty of Alleghany*, 515 F.3d 224, 235 (3d Cir. 2008).

Similarly, "[t]he burden of presenting evidence establishing a *prima facie* case of personal jurisdiction over each defendant falls on the plaintiff." *Benitez v.*

*JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 581 (D.N.J. 2015); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) ("[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.").

### B. Plaintiffs Fail To Allege Personal Jurisdiction Over Nestlé And Ferrara Regarding The Claims Of Out-Of-State Plaintiffs

The non-New Jersey plaintiffs' claims against the non-New Jersey defendants, Nestlé and Ferrara, fail right out of the gate because plaintiffs have not plausibly alleged that this Court has personal jurisdiction over Nestlé and Ferrara.

Neither Nestlé nor Ferrara is at home in New Jersey. Nestlé is incorporated in Delaware and maintains its principal place of business in Virginia, and Ferrara is incorporated in Illinois and maintains its principal place of business there. FAC ¶¶ 10-11. To establish *general* jurisdiction on *that* record, plaintiffs must allege that Nestlé and Ferrara's "contacts with New Jersey are so substantial as to render [them] 'at home'" there. *Chernus v. Logitech, Inc.*, 2018 WL 1981481, at *6 (D.N.J. Apr. 27, 2018); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (a corporation is "at home" only in those states where it is incorporated or has its principal place of business); *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (to establish general jurisdiction, defendant's affiliation with the forum state must be "so continuous and systematic as to render them essentially at home") (internal quotation marks omitted).

10

The conclusory allegation that Nestlé and Ferrara have "substantial contacts with and receive[] substantial benefits and income from and through the State of New Jersey" falls well short of the heavy burden to allege general jurisdiction. *See* FAC ¶¶ 10, 11.

Plaintiffs also cannot show *specific* jurisdiction over Nestlé and Ferrara regarding the claims of the non-New Jersey plaintiffs. "In order for a state court to exercise specific jurisdiction, 'the suit' must '*aris[e] out of* or *relat[e] to* the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017) (emphasis added) ("*BMS*"); *accord Daimler*, 571 U.S. at 118; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction is only established where the defendant "purposefully directed" its activities "toward the forum State"—*as it relates to the claim*. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (plurality op.) (internal quotation marks omitted).

The non-New Jersey plaintiffs have not alleged any facts linking their purchase of candy products to Nestlé or Ferrara **and** to New Jersey. Under this record, *BMS* controls. There, the Supreme Court held that California courts lack specific jurisdiction over a non-local defendant relating to the claims of out-of-state plaintiffs who "do not claim to have suffered harm in that State" when "all the conduct giving rise to nonresidents' claims occurred elsewhere." 138 S. Ct. at

1782. The holding in *BMS* applies with equal force in the class action context, precluding federal courts from exercising jurisdiction over the claims of named plaintiffs (in cases filed as class actions) who reside outside of New Jersey, where (like here) New Jersey is not the defendants' state of residence and where the named plaintiffs have not alleged that the relevant unlawful conduct at issue as to all named class members *occurred primarily* in New Jersey. *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *15-16 (D.N.J. Apr. 25, 2018), *opinion clarified on denial of reconsideration*, 2019 WL 77306 (D.N.J. Jan. 2, 2019) (*BMS* applies to named plaintiffs and dismissing the claims of named non-resident plaintiffs against non-resident defendants for lack of specific jurisdiction); *cf Ponzio v. Mercedes-Benz USA, LLC*, 2020 WL 1183733, at *8 (D.N.J. Mar. 11, 2020) (the principles announced in BMS *were* applicable to class action, but finding that the plaintiffs there had adequately pleaded facts to demonstrate specific personal jurisdiction).

Plaintiffs fail to explain New Jersey's connection to a Texas consumer's claims against an Illinois corporation relating to the purchase of candy product at a Texas Walmart. And even if New Jersey putative class members allegedly sustained the same type of injury as the Texas consumer, that is insufficient to establish specific jurisdiction over the non-New Jersey defendant relating to the Texas consumer's claims. *Chernus*, 2018 WL 1981481, at *6. Just as in *BMS,* there

12

is no "adequate link between the State and the nonresidents' claims," and thus there is no specific jurisdiction over the defendant. 137 S. Ct. at 1781.

Indeed, by already amending their complaint, plaintiffs seemed to anticipate a jurisdictional challenge, but their amendment falls short of resolving it. The original complaint asserted claims only against Ferrara (Illinois) and Nestlé (Delaware, Virginia); the amended complaint added Ferrero (New Jersey). *See* FAC ¶ 12. But plaintiffs never bothered to tailor their factual allegations to the presence of Ferrero, or to make any distinctions in the complaint about their specific purchases vis-à-vis products, dates, and defendants so that the amended complaint sufficiently addressed which defendant was allegedly liable for which purchase. Plaintiffs' failure to plead these most basic elements of their claims— and to detail which among these three different defendants allegedly caused them harm—not only supports dismissal based on plaintiffs' failure to properly allege this Court's jurisdiction, but also requires dismissal under well-established pleading requirements.

### C.  <u>As a Matter of Law, The Reasonable Consumer Would Not Be Deceived By The Alleged Slack-Fill In The Challenged Products</u>

An essential element of all of plaintiffs' claims is that defendants must have engaged in conduct that would be materially misleading to a reasonable consumer. *See* App'x A (listing the elements of claims for violation of the consumer protection statutes of New Jersey, New York, Florida, Michigan, Illinois, North

13

Carolina, and Texas). Plaintiffs fail to meet this standard and, for that reason, all of their claims fail. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (rejecting all theories of deception and affirming summary judgment against plaintiffs who brought consumer deception claims under "fourteen consumer protection statutes spanning twelve different states," including all seven states here, where all statutes required plaintiffs "to prove that the relevant labels are likely to deceive reasonable consumers."). Here, plaintiffs' allegation that they expected the candy boxes to be "filled to the top," and were deceived because there was slack-fill in the candy boxes is unreasonable and cannot plausibly allege deception. As discussed more fully below, this basic failure dooms the entire FAC.

### 1. Reasonable Consumers Are Not Deceived By Slack-Fill

A line of court decisions going back at least seventy years recognizes, as a matter of law, that consumers expect food packages to contain slack-fill. *See United States v. Cataldo*, 157 F.2d 802 (1st Cir. 1946); *United States v. 116 Boxes of Arden Assorted Candy Drops*, 80 F. Supp. 911 (D. Mass. 1948); *United States v. 174 Cases of Delson Thin Mints*, 180 F. Supp. 863 (D.N.J. 1960), *aff'd after remand*, 302 F.2d 724 (3d Cir. 1962); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016). As the *Arden Assorted Candy Drops* court explained:

> The [FDCA] . . . prohibits the shipment of a package of candy which is in fact so slack-filled as to be misleading . . . [But] [i]nfantile anticipation is not the test. Rather it is what would be expected by an ordinary person . . . who has been led to expect and desire machine-

14

packing . . . [F]rom buying various types of five-cent candies, cough drops, and lozenges packed by machine in standard rectangular containers, [*the ordinary consumer] has come to expect some slack or air space*.  Indeed, he recognizes that tight packing would often solidify into a mass [of] pieces which he prefers to have separate. It is the expectations of a person who has that common degree of familiarity with our industrial civilization which furnish the standard . . . .

80 F. Supp. at 913 (emphasis added). As many courts recognize, and in reasoning directly applicable and dispositive here:[3]

[I]t is not plausible that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled into thinking the container would be filled to the brim with [p]roduct.

*Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022, at *5 (N.D. Cal. Apr. 12, 2019) (internal quotation marks omitted).

Plaintiffs' idiosyncratic and unreasonable expectations regarding the Products are insufficient to plausibly allege that reasonable consumers would be deceived. Setting aside whether slack-fill in the box is functional or nonfunctional, reasonable consumers *expect* slack-fill in food packages and are *not* deceived by it. *See Ebner*, 838 F.3d at 967 ("Because of the widespread nature of . . . [slack-fill], no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein."); *Alce v. Wise Foods,*

---

[3] Despite plaintiffs' assertion otherwise, no court has found claims regarding nonfunctional slack-fill in food products to be "meritorious."

*Inc.*, 2018 WL 1737750, at *11 (S.D.N.Y. Mar. 27, 2018) ("[C]onsumers may have come to expect significant slack-fill in potato chips and other snack products."); *Daniel v. Mondelez Int'l. Inc.*, 287 F. Supp. 3d 177, 191 (E.D.N.Y. 2018) ("[B]ecause consumers have come to expect at least some slack-fill, context, including labels, are likely important considerations in assessing product amount or quantity.").

### 2. Reasonable Consumers Are Not Deceived Because The Label Declares Exactly How Much Candy Is In The Box

It is not plausible that plaintiffs were deceived as to the amount of candy that was in the Products because, as they readily acknowledge, the Products' labels contain numerous label statements informing consumers as to the amount of candy in the box, including net weight (in ounces and grams), serving size (in cups, tablespoons, or pieces), and servings per container measurements that tell consumers precisely how much candy is in the box. *See* pages 1, 7, *supra*; FAC ¶¶ 28, 29, 44. Plaintiffs acknowledge the existence of these statements and do not contend (nor could they) that this information is inaccurate. *See* FAC ¶¶ 28, 29, 44.

Reasonable consumers are not deceived by slack-fill where, as here, the product packaging contains net weight, serving size and servings-per-container statements providing an accurate measure of candy in the boxes. Plaintiffs could have easily reviewed the readily available label statements to resolve any potential ambiguity. *See* pp. 1, 7 & n.2, *supra*. In addition, reasonable consumers could gain

further information about the contents by holding and tipping or shaking the box, and objectively observing (through feel and sound) that the box is not full.

In the face of this detailed and accurate information about the amount of candy in each box, plaintiffs' claims cannot proceed. The Ninth Circuit's decision in *Ebner* is illustrative of the analysis. There, the plaintiff had claimed that the size and weight of lip balm packaging created the impression that there was more product than was actually in the container. *Ebner*, 838 F.3d at 962. The court affirmed the district court's dismissal on the pleadings, holding as a matter of law that a reasonable consumer could not have plausibly been deceived as to the volume of the product based on the size and weight of the packaging. *Id*. at 967. The court of appeals squarely rejected the theory of deception at the heart of the plaintiff's claim, because it required consumers to ignore objective facts and common sense in light of the "accurate net weight label" that was "affixed to every [product] and its accompanying cardboard box." *Id*. And, the court added, consumers are familiar with the realities of consumer goods packaging, such that "no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." *Id*.

The court in *Bush* reached the same result, holding that plaintiff's claims of deceptive slack-fill in snack products were "implausible because [the] product labels disclose[d] the net weight and number of cookies per container and

consumers expect there to be some slack-fill in opaque snack containers." *Bush v. Mondelez Int'l. Inc.*, 2016 WL 7324990, at *2 (N.D. Cal. Dec. 16, 2016); *accord Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016). As the *Bush* court recognized, the opacity of product boxes does not render reasonable consumers helpless in their effort to determine how much product is in the boxes (*contra* FAC ¶¶ 1-9 (pages 15-20), 23, 26):

> [I]t is undisputed that the Go-Pak product labels disclose the net weight of included product, as well as the number of cookies or crackers per container. Opaque containers with slack-fill at the top are common in the snack market. "Targeted consumers" thus expect some slack-fill. No reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product . . . Moreover, any potential ambiguity could be resolved by the back panel of the products.

> *    *    *

> In the absence of other indications of snack quantity on the package, it is not plausible that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled into thinking the container would be packed to the brim with snack.

*Bush v. Mondelez Int'l, Inc.*, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016) (internal quotation marks omitted).

A significant number of courts are aligned. *See Daniel v. Tootsie Roll, Indus., LLC*, 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018) ("We can easily conclude, as a matter of law, that the slack-fill enclosed in the Products would not mislead a reasonable consumer, as the Product boxes provide more than adequate

information for a consumer to determine the amount of Product contained

therein."); *Alce*, 2018 WL 1737750, at *11 ("[C]onsumers may have come to

expect significant slack-fill in . . . snack products."); *Daniel*, 287 F. Supp. 3d at

191; *Bush*, 2016 WL 7324990 , at *2; *Hu v. Iovate Health Scis. U.S.A. Inc.*, 2018

WL 4954105, at *3 (S.D.N.Y. Oct. 12, 2018) (as a matter of law reasonable

consumers are not misled by non-functional slack-fill where the products

accurately disclose the net weight); *Morrison v. Barcel USA*, LLC, 2019 WL

95477, at *4 (S.D.N.Y. Jan. 2, 2019) (granting motion to dismiss because

plaintiffs' failed to plausibly allege that slack-fill was non-functional based on

comparison to other similar products); *Wurtzburger v. Ky. Fried Chicken*, 2017

WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (rejecting the argument that the use

of a larger than necessary container is materially deceptive or misleading under

section 349 "when the consumer ordered, purchased, and received the precise

number of items requested."); *Green v. SweetWorks Confections, LLC*, 2019 WL

3958442, at *6 (S.D.N.Y. Aug. 21, 2019) (slack-fill is not materially misleading as

a matter of law because challenged package clearly and accurately disclosed net

weight); *Fermin*, 215 F. Supp. 3d. at 211-12; *Martinez-Leander v. Wellnx Life*

*Scis., Inc.* 2017 WL 2616918, at *8 (C.D. Cal. March 6, 2017); *Hawkins v. UGI*

*Corp.*, 2016 WL 2595990, at *3 (C.D. Cal. May 4, 2016) ("[R]egardless of

consumers' inability to visually observe the level of product remaining in a

cylinder . . . , Plaintiffs here cannot plausibly allege that Defendants' admittedly accurate net weight labels [ ] are fraudulent, deceptive, or misleading."); *Buso v. ACH Food Companies, Inc.*, 2020 WL 1929024, at \*4 (S.D. Cal. Apr. 20, 2020) ("[I]t is unreasonable for a customer to be deceived as to the amount of product contained in the cornbread mix box. It is undisputed that the cornbread mix package discloses the product's net weight and the approximate number of servings per container."); *Kennard*, 2019 WL 1586022, at \*5 (observing that "the Alexia product packaging discloses the product's net weight, the number of fries per serving, and the approximate number of servings per container" and thus reasonable consumers could not be misled into thinking the boxes would be full). In this context, plaintiffs' assertion that they expected "a box *full* of candy product" (FAC ¶ 23) is not the objective expectation of a reasonable consumer.

In line with those decisions, dismissal is warranted here. Plaintiffs cannot plausibly allege that reasonable consumers would ignore the accurate net weight, serving size and servings per container statements on the package (pp. 1, 7, *supra*)—to say nothing of their common and previous experience with packaged goods—to arrive at a conclusion that a candy box must be brimming with candies simply because of the shape and size of the box. Since no reasonable consumer would be misled in the manner alleged, all of plaintiffs' claims must fail.

### D.   <u>Plaintiffs Fail To Plausibly Allege Injury Or Ascertainable Loss.</u>

Each of plaintiffs' claims also fails for the independent reason that they have

failed to plausibly allege that they have suffered an actual injury or ascertainable

loss.[4] *See* Appx. A (requirements for state consumer protection claims). Courts in

New York and Illinois, for example, have dismissed nearly identical claims

regarding slack-fill in concession box candy. *See Stemm v. Tootsie Roll Indus.,*

*Inc.*, 374 F. Supp. 3d 734, 742–44 (N.D. Ill. 2019) (that the plaintiff "expected to

receive something more than what she got, in and of itself, does not constitute

actual damages" and plaintiff failed to plausibly allege that she paid more than the

actual value of the candy); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at

---

[4] *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (dismissing case brought under Texas' DTPA for lack of injury and noting that "[m]erely asking for money does not establish an injury in fact"); *Ealey v. Benjigate Estates, LLC*, 2013 WL 6409987, at *7 (E.D. Mich. Dec. 9, 2013) (under the MCPA, if "individual or class damage" is sought, the plaintiff must be "a 'person who suffers loss'"); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 791 (N.J. 2005) (plaintiff must demonstrate "ascertainable loss" as a prerequisite to a private claim under NJCFA); *Anders v. Hyundai Motor Am. Corp.*, 407 S.E.2d 618, 623 (N.C. Ct. App. 1991) (affirming summary judgment on N.C. unfair trade practices claims where "plaintiff cannot show any injury resulting from the alleged deceptive statement"); *Himes v. Brown & Co. Secs. Corp.*, 518 So. 2d 937, 938 (Fla. Dist. Ct. App. 1987) (finding no recovery under FDUTPA for misleading and false advertisement where plaintiff sustained no out-of-pocket losses); *Pearce v. Am. Def. Life Ins. Co.*, 343 S.E.2d 174, 180 (N.C. 1986) ("It must be shown that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation" to show a violation of the N.C. UDTPA).

*7 (S.D.N.Y. Oct. 26, 2016) (bare allegations that the plaintiff paid a premium price were insufficient to allege injury under the GBL).

Plaintiffs make conclusory allegations that they paid a "premium" or "suffered an ascertainable loss" as the result of slack-fill, but plead no facts to support that conclusion. *See, e.g.*, FAC ¶¶ 76. 93, 181. These vague allegations are insufficient. Plaintiffs are required to allege specific facts to show that they suffered an injury or loss, which includes (at a minimum), the price they paid, the price of competitor products and the amount of the alleged premium attributable to the alleged slack-fill. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). Conclusory allegations that plaintiff "was damaged by spending money on products he would not have purchased absent [defendant] concealing or misleading consumers about certain information is insufficient to allege injury." *Id*. Although "overpayment or [payment of a] price premium" can constitute an injury, "[s]imply recit[ing] the word 'premium' multiple times in the[] Complaint does not make Plaintiffs' injury any more cognizable." *Id.*; *Weiner v. Snapple Beverage Corp.*, 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (injury not shown where "Plaintiffs have failed to allege sufficient facts to show that they in fact paid a premium for the 'All Natural' label.").

The same standards apply to allegations of ascertainable loss—plaintiffs are required to plead specific facts showing a loss that is "quantifiable or measurable,"

not hypothetical. *Franulovic v. Coca Cola Co.*, 2007 WL 3166953, at *7 (D.N.J. Oct. 25, 2007) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). A plaintiff can only meet this standard by stating specific facts that demonstrate "the difference in value between the product promised and the one received" in a manner that can be reasonably quantified.  *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 100-103 (D.N.J. 2011).

None of the plaintiffs comes close to alleging the requisite injury or ascertainable loss. Plaintiffs' failure to allege facts supporting injury or an ascertainable loss is no oversight. Plaintiffs are unable to do so because the concession style boxed candy that plaintiffs purchased is the *lowest* price per ounce pack for these products available in the marketplace (in most stores the products sell for $.99) and there is no allegation (nor could there be) that the Products are more expensive than competitor concession boxed candy. Because the FAC is devoid of facts that would enable the Court to "objectively quantify" the difference in value between the product expected and the product received, the motion to dismiss should be granted. [5] *In re Cheerios Mktg. & Sales Practices Litig.*, 2012

---

[5] This problem would only magnify if plaintiffs' claims were to proceed beyond the motion-to-dismiss stage to class certification. It is well established that defendants have a "due process" right to challenge the particulars of every class plaintiff's claim. *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). That the named plaintiffs here cannot even recall, with a sufficient degree of

WL 3952069, at *13 (D.N.J. Sept. 10, 2012) (dismissing claims because plaintiffs failed to meet the ascertainable loss standard by not estimating a differentiation of price between the product purchased and a comparative product).

### E. **Plaintiffs' Claims Are Not Plead With Particularity**

Plaintiffs allege fraudulent conduct. FAC ¶¶ 64.g., 73, 77, 78, 120, 144, 172, 186-193. Accordingly, their claims must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b). *See* App'x A (statutory claims must comply with Rule 9(b); *see also SAT Agiyar, LLC v. 7-Eleven, Inc.*, 2020 WL 3546821, at *5 (D.N.J. June 30, 2020) ("A negligent misrepresentation claim sounds in fraud, and must be pleaded with particularity, if it 'references allegations of fraud and relies upon an allegedly false representation.'"); *Neuss v. Rubi Rose, L.L.C.*, 2018 WL 445432, at *8 (D.N.J. Jan. 16, 2018) (common law fraud claims "must be plead with particularity in accordance with Federal Rule of Civil Procedure 9(b)").

Under Rule 9(b), plaintiffs must, "at a minimum," support their claims "with all of the essential factual background that would accompany the first paragraph of

---

particularity, the details of their purchases or allege facts showing an ascertainable loss bespeaks serious problems for an entire class of consumers attempting to do so. *See, e.g.*, *id.* at 307, 309 (rejecting class certification on ascertainability grounds where "individualized fact-finding or mini-trials will be required to prove class membership" such as sufficient proof of purchase, particularly where there are suggestions from the named plaintiffs' own conduct "that individuals will have difficulty accurately recalling their purchases").

any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (internal quotation marks omitted); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (the date, time and place of the alleged fraud must be pled).

Plaintiffs' complaint fails to meet these requirements. They do not allege exactly when and where they purchased the products and the price they paid for the products. This information is necessary to evaluate plaintiffs' claims, including whether a given defendant is the appropriate party, whether the Court has jurisdiction over the claims, and whether plaintiffs have a cognizable claim for injury. *See Izquierdo*, 2016 WL 6459832, at *9 (in a slack-fill case, the complaint fell "far short" of Rule 9(b)'s pleading requirements where it provided only the "barest details" to support the alleged fraudulent misrepresentations concerning the candy and did not provide details as to when and where the product was purchased and the purchase price); *Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp. 2d 825, 828 (N.D. Ill. 2004) ("The heightened standard [of Rule 9(b)] requires more than an allegation that the fraud occurred sometime during a period of months or years."); *accord Torres-Hernandez v. CVT Prepaid Sols., Inc.*, 2008 WL 5381227, at * 8 (D.N.J. Dec. 17, 2008) (dismissing NJCFA claim because the plaintiff failed to pin down the alleged misrepresentations to a specific time).

In addition, plaintiffs generally contend that each defendant was the "owner, manufacturer, distributor, advertiser, and seller of the Products, and is the company that created and/or authorized the false, misleading, and deceptive advertisements and/or packaging and labeling for the Products." FAC ¶¶ 10-12. But it is implausible that all three separate defendants simultaneously owned and sold the candy boxes at issue here, let alone that they were all interchangeably responsible for plaintiffs' particular candy purchases in different locations around the country. Pleading in these kinds of generalities fails to satisfy the heightened Rule 9(b) pleading standard. *Lannin v. NRT Title Agency, LLC*, 2019 WL 4055389, at *2 (D.N.J. Aug. 27, 2019) (plaintiffs must plead fraud with particularity with respect to each defendant. Indeed, plaintiffs fail to even satisfy baseline Rule 8 pleading requirements. *See Burrell v. Pacifica Solevita, LLC*, 2018 WL 3620483, at *3 (D. Nev. July 27, 2018) (Where there are multiple defendants, it is important that the complaint allege which defendants are liable for which wrongs.)

Moreover, plaintiffs provide no factual support for their allegation that the slack-fill in the products was nonfunctional (*i.e.*, that it has no functional purpose as recognized by FDA or can be easily avoided). *See* Section II.B., *supra*. They just say, over and over again, that the slack-fill here is "nonfunctional." *See, e.g.*, FAC ¶¶ 16, 23, 26, 53, 79, 120, 143. At most, plaintiffs assert conclusory theories that the slack-fill is nonfunctional because it allegedly does not fit within a narrow

set of "functions" defined by plaintiffs, rather than the broader enumerated safe-harbor functional reasons set out in the federal slack-fill regulation. Plaintiffs provide no particularized allegations to back up their assertion that the alleged slack-fill here is nonfunctional as defined in the FDA regulation. *See Morrison*, 2019 WL 95477, at *4; *Jackson v. Gen. Mills, Inc.*, 2019 WL 4599845, at *6 (S.D. Cal. Sept. 23, 2019) (dismissing claims on preemption grounds because plaintiff failed to sufficiently allege that the challenged slack-fill was nonfunctional).

In sum, despite its considerable length, plaintiffs' FAC is deficient where it matters: the who (which defendant?), what (what did they pay?), where (which store?), when (on what date?), and why (functional or nonfunctional slack-fill?) of their consumer fraud claims.

### F.   <u>Plaintiffs' Common Law Claims Should Be Dismissed</u>

In addition to bringing claims pursuant to the consumer protection statutes of each individual state, plaintiffs also assert common law claims for breach of express and implied warranty, fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment. Plaintiffs fail to allege under which states' laws these claims are brought, which is an independent reason to dismiss these claims. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (the elements of unjust enrichment vary materially from state to state).

For the purposes of this motion, defendants assume plaintiffs' common law claims are brought under New Jersey law.

### 1.    Unjust Enrichment

New Jersey law, for instance, does not recognize unjust enrichment as an independent tort cause of action. *Mason v. Coca-Cola Co.,* 2010 WL 2674445, at *7 (D.N.J. June 30, 2010); *Torres-Hernandez*, 2008 WL 5381227, at *9. Therefore, a determination that plaintiffs' consumer protection claims fail, would require their unjust enrichment claim to also fail. *See Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *7 (D.N.J. Oct. 31, 2011) (unjust enrichment claim dismissed where statutory consumer protection claims were also dismissed).

A plaintiff also cannot recover under an unjust enrichment theory when he "purchases specific goods and receives those same specific goods." *In re Cheerios*, 2012 WL 3952069, at *13. Plaintiffs do not deny that they received the goods that they paid for—in the amount stated on the box—and consumed them. Instead, they seek to recover for something *more* than they paid for—an amount greater than that stated on the box. There is no unjust enrichment in these circumstances.

Moreover, in order to state a viable claim for unjust enrichment in New Jersey, the parties must enjoy a direct commercial relationship; *i.e.*, a plaintiff who purchases a product from a retailer cannot assert an unjust enrichment claim against the manufacturer unless the retailer and manufacturer are sharing profits.

28

*See, e.g., Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *14 (D.N.J. Mar. 31, 2010) ("unjust enrichment claim also requires a 'direct relationship' between the parties or a mistake on the part of the party conferring the benefit"); *see also Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (in New Jersey, unjust enrichment of a manufacturer is possible only where the benefit is conferred on a retailer that shares profits with the manufacturer). Because plaintiffs have alleged no facts showing that they purchased the products directly from defendants or that the retailers from whom they purchased the products were sharing profits with defendants, their unjust enrichment claim fails as a matter of law. *Laney v. Am. Standard Cos.,* 2010 WL 3810637, at *12 (D.N.J. Sept. 23, 2010).

Plaintiffs' claims face problems under other state laws, as well. Under New York law, for instance, it is well established that an unjust enrichment claim that merely duplicates other state law claims (as plaintiffs' unjust enrichment claim does here, without even an attempt to state facts uniquely tailored to that claim) cannot survive a motion to dismiss. *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 78 (E.D.N.Y. 2017) (dismissing as duplicative an unjust enrichment claim based on the same allegations as plaintiff's other claims and collecting cases); *Buonasera v. The Honest Co.*, 208 F. Supp. 3d 555, 567-68 (S.D.N.Y. 2016); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015).

## 2. Fraud and Intentional Misrepresentation

Under New Jersey law, a claim for common law fraud requires proof of "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Panell v. O'Brien*, 2006 WL 2466858, at *8 (D.N.J. Aug. 24, 2006) (emphasis omitted). Plaintiffs' claim founders for multiple reasons. *See* FAC ¶¶ 186-93.

For the same reasons that their statutory claims fail, the fraud and intentional misrepresentation claims fail too. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704-05 (D.N.J. 2011) (dismissing intentional and negligent misrepresentation claims "because their allegations . . . are substantively identical to their allegations to support their NJCFA claim" which was also dismissed). In addition, plaintiffs fail to identify any affirmative, material misrepresentation made by defendants. Plaintiffs' entire theory is based on the assumptions made by plaintiffs as to the amount of candy in the box. Yet plaintiffs specifically acknowledge the affirmative label statements that objectively detail the precise amount of candy in the box and further recognize that the label statements accurately provide the net weight and serving size (and never allege that these label statements are in any way in error). FAC ¶¶ 28, 29, 44. Accordingly, these claims should be dismissed because plaintiffs fail to allege any misrepresentation of material fact.

Moreover, common law fraud is subject to Rule 9(b)'s heightened pleading requirement. *CBD & Sons, Ltd. v. Setteducati*, 2019 WL 396982, at \*5 (D.N.J. Jan. 31, 2019). As discussed in Section III.E, *supra*, plaintiffs' allegations fail to meet these heightened pleading requirements and should be dismissed.

### 3.    Negligent Misrepresentation

Plaintiffs' claim for negligent misrepresentation rests on the same elements of their intentional misrepresentation claim. Indeed, plaintiffs' conclusory pleading on the two claims is virtually identical—just with the word "negligent" swapped in for "intentional." *Compare* FAC ¶¶ 201-08, *with id.* at ¶¶ 209-16. As with their NJCFA, fraud, and intentional misrepresentation claims, plaintiffs have not alleged with the requisite particularity any "material misrepresentation," "economic loss or injury," or that they "justifiably relied" on any misleading statement given the objective statements of fact on the candy boxes. *Mason*, 774 F. Supp. 2d at 704.

And that is just under New Jersey law. Plaintiffs neglect to mention the state law under which they pursue their common law claims. If, for instance, it is New York, then plaintiffs must allege facts showing that they enjoyed a "special relationship" with defendants, which is "a closer degree of trust between the parties than that of the ordinary buyer and seller." *Izquierdo*, 2016 WL 6459832, at \*7; *accord Dallas Aerospace, Inc. v. CIS Air Corp.*, 2002 WL 31453789, at \*3

(S.D.N.Y. Oct. 31, 2002). Plaintiffs' allegations do not come close to suggesting that they enjoyed such a relationship.

### 4.    Breach Of Implied Warranty

As recognized in New Jersey, and in nearly every other state, a basic requirement of a claim for breach of implied warranty is an allegation that the products are defective or unfit for the *ordinary purpose* for which they are used. *See Pappalardo v. Combat Sports, Inc.*, 2011 WL 6756949, at *8-9 (D.N.J. Dec. 23, 2011); *Thorner v. Fleetwood*, 2002 WL 1998285, at *1 (N.D. Ill. Aug. 28, 2002); *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 265 (1995). Food, like the candy at issue, is fit for its ordinary purpose if it is fit for human consumption. There is no allegation in the FAC that the Products were not fit for consumption, *i.e.*, their "ordinary use." Indeed, plaintiffs allege that they would buy the products again if there were more candy in each box. FAC ¶¶ 1-9.

Plaintiffs' allegations regarding slack-fill are unrelated to the "ordinary purpose" of the products and do not support a claim for breach of implied warranty of merchantability. Accordingly, this claim should be dismissed. *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *22 (D.N.J. July 21, 2011); *see also Luna v. Am. Airlines*, 676 F. Supp. 2d 192, 204 (S.D.N.Y. 2009) (an implied warranty claim required plaintiff "to demonstrate injury as a result of her exposure to food not fit for consumption"); *Crozier v. Johnson & Johnson*

*Consumer Cos.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012) (dismissing with prejudice implied warranty claims because plaintiffs did not allege any problem with antiseptic spray's functioning, only with "allegedly misleading advertising").

### 5.    Breach Of Express Warranty

Plaintiffs also have not plausibly alleged a breach of express warranty under New Jersey law. To do so they must allege with particularity "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *23 (D.N.J. Nov. 30, 2011) (internal quotation marks omitted); *Hoffman v. Cogent Sols. Grp.*, 2013 WL 6623890, at *6 (D.N.J. Dec. 16, 2013) (granting motion to dismiss where plaintiff fails to allege with particularity the "existence of express warranties, or damages flowing from [d]efendant's alleged breach"). Moreover, to "support the existence of an express warranty," plaintiffs must show that "they were in privity with Defendants or that Defendants made an express warranty" to them. *Stranger v. APP Pharm., LLC*, 2010 WL 4941451, at *4 (D.N.J. Nov. 30, 2010).

Plaintiffs' express warranty claims fail for many reasons. First, it is well established that  "an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 WL 2813788, at *10 (D.N.J. July 9, 2010) (internal quotation marks omitted).

Second, the only express "promise" regarding the quantity of contents on the packages is the net weight statement, which plaintiffs admit is accurate. So, even assuming that plaintiffs' may claim an express warranty, it has not been breached. The "description of the goods which is made part of the basis of the bargain" here—the objective statements of weight and serving size—conformed to what was delivered. N.J.S.A. § 12A:2–313. Accordingly, the express warranty claims should be dismissed.

### G.   Plaintiffs Lack Standing to Seek Injunctive Relief

Finally, Plaintiffs do not have standing to seek injunctive relief. This is due to the fact that plaintiffs are now aware of the alleged deception and thus are not in danger of suffering similar injury in the future. *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 166 (3d Cir. 2007); *Miller v. Samsung Elecs. Am. Inc.*, 2016 WL 6806331, at *4-5 (D.N.J. Nov. 16, 2016) ("In order for Plaintiff to be misled, he would have to ignore his past dealings with Defendant and its products."); *Robinson v. Hornell Brewing Co.*, 2012 WL 1232188, at *6 (D.N.J. Apr. 11, 2012) (because plaintiff was aware of the allegedly deceptive advertising, he could "control the risk of [future] injury by merely refraining from buying the [product]"); *Berni v. Barilla S.p.A.,* 964 F.3d 141, 147 (2d. Cir. 2020) ("[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate.").

34

IV.   **CONCLUSION**

For the foregoing reasons, and for good cause shown, the Court should

dismiss Plaintiffs' First Amended Complaint in its entirety.

Dated: August 6, 2020                    Respectfully submitted,

                                         /s/   *Jennifer M. Rosa*
                                         Jennifer M. Rosa
                                          jrosa@mayerbrown.com
                                         MAYER BROWN LLP
                                         1221 Avenue of the Americas
                                         New York, NY 10020-1001
                                         Telephone: (212) 506-2500
                                         Facsimile: (212) 262-1910

                                         Dale J. Giali (*pro hac vice* pending)
                                          dgiali@mayerbrown.com
                                         Keri E. Borders (*pro hac vice* pending)
                                          kborders@mayerbrown.com
                                         MAYER BROWN LLP
                                         350 S. Grand Ave., 25th Floor
                                         Los Angeles, CA 90071-1503
                                         Telephone: (213) 229-9500
                                         Facsimile: (213) 625-0248

                                         *Attorneys for Defendants Nestlé USA,*
                                         *Inc., Ferrara Candy Company, and*
                                         *Ferrero U.S.A., Inc*

## <u>APPENDIX A – CONSUMER PROTECTION STATUTES ELEMENTS</u>

*New Jersey.*  In count one, plaintiffs bring claims under the New Jersey

Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.* ("NJCFA"). To prevail,

plaintiffs must show: [1] unlawful conduct by defendant; [2] an ascertainable loss

by plaintiff; and [3] a causal relationship between the unlawful conduct and the

ascertainable loss. *Nationwide Mut. Ins. Co. v. Caris*, 170 F. Supp. 3d 740, 746

(D.N.J. 2016). "Unlawful practices" include deception, fraud, misrepresentation, or

concealing a material fact. *See id.* The reasonableness of an unlawful practice is

assessed based on an average consumer's expectations. *See N.J. Citizen Action v.

Schering-Plough Corp.*, 842 A.2d 174, 177 (2003) (business practice must be

misleading to the average consumer). NJCFA claims must meet Fed. R. Civ. P.

9(b) particularity. *See Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826, 833

(D.N.J. 2013) ("Where FDUTPA claims *do* happen to sound in fraud, federal

courts will apply the heightened pleading standard of Rule 9(b).").

*New York.* In counts three and four, plaintiffs allege violations of the New

York Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law §§ 349 *et

seq.* and 350 ("GBL"), which must satisfy three elements: "(1) the defendant's act

or practices must have been directed at consumers; (2) the defendant's acts or

practices must have been *misleading* in a material way; and (3) the plaintiff must

have sustained injury as a result." *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*,

30 F. Supp. 3d 183, 192 (E.D.N.Y. 2014) (emphasis added and internal quotation marks omitted); *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 526 (S.D.N.Y. 2009) ("Plaintiff[s] must show that Defendant's actions would materially *mislead* a reasonable consumer, and that Plaintiff was injured as a result of Defendant's acts.") (emphasis added).  New York courts apply a "reasonable consumer" standard to determine whether an act is materially misleading. *Friedman*, 30 F. Supp. 3d at 195.

 **Florida.**  In count five, plaintiffs allege violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"), which requires "(1) a *deceptive* or unfair practice; (2) causation; (3) actual damages." *Dzielak v. Whirlpool Corp.*, 2019 WL 6607220, at *20 (D.N.J. Dec. 5, 2019) (emphasis added). A "deceptive act is one that is 'likely to mislead a consumer acting reasonably[.]'" *Id.* (quoting *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281, 1284 (11th Cir. 2007)); *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011) ("[A] deceptive act occurs when 'there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'"). Claims under the FDUTPA must be plead with particularity pursuant to Fed. R. Civ. P. 9(b). *See Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (Rule 9(b) applies to FDUTPA claims).

37

*Michigan.* In count six, plaintiffs allege violations of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901 *et seq*. "The elements of a claim for violating the [Michigan Consumer Protection] Act are: (1) the defendant is engaged in trade or commerce, [citation]; (2) the conduct by the defendant is prohibited under Michigan Compiled Laws 445.903(1); (3) if requesting declaratory or injunctive relief, the plaintiff is a person as defined in the Act [citation omitted]; and (4) if requesting individual or class damage relief, the plaintiff is 'a person who suffers loss.'" *Ealey v. Benjigate Estates, LLC*, 2013 WL 6409987, at *7 (E.D. Mich. Dec. 9, 2013). Conduct prohibited under Michigan Compiled Laws 445.903(1) includes: (1) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," (2) "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," or (3) "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." Mich. Comp. Laws Ann. § 445.903(c), (s) & (bb). These claims must be plead with particularity under Fed. R. Civ. P. 9(b). *See In re Gen. Motors LLC Ignition Switch Litig.,* 257 F. Supp. 3d 372, 421 (S.D.N.Y. 2017) (Michigan Consumer Protection Act claims premised on fraud "must meet the heightened pleading standards of

38

Rule 9(b)").

*Illinois.* In count seven, plaintiffs allege violations of the Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* ("ICFA"). "To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a *deceptive* act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the *deception*, (3) the *deception* occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's *deception*." *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016) (emphases added). On a motion to dismiss, "courts ask whether the alleged deceptive act or practice creates the likelihood of deception or has the capacity to deceive a reasonable consumer." *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *3 (N.D. Ill. June 9, 2020). Claims under the ICFA must be pled with particularity under Fed. R. Civ. P. 9(b). *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 755-56 (N.D. Ill. 2015) (Rule 9(b) applies to ICFA claims).

*North Carolina.* In count eight, plaintiffs allege violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. §§ 75-1 *et seq.* ("N.C. UDTPA") which requires showing "(1) an unfair or *deceptive* act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiff." *Christmas v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 435, 445

(E.D.N.C. 2014) (emphasis added). "[A] plaintiff must plausibly allege actual reliance and reasonable reliance" to support a misrepresentation claim. *Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015). These claims must be pled with particularity under Fed. R. Civ. P. 9(b). *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) ("Rule 9(b) applies to section 75-1.1 claims alleging detrimental reliance on false or deceptive representations.")

 **Texas.** In count nine, plaintiffs allege violations of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 *et seq.*, the elements of which are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or *deceptive* acts; and (3) these acts constituted a producing a cause of the consumer's damages. *Univ. Baptist Church of Fort Worth v. Lexington Ins. Co.*, 346 F. Supp. 3d 880, 889 (N.D. Tex. 2018), *aff'd* 787 F. App'x. 194 (5th Cir. 2019) (emphasis added). For a misrepresentation to be actionable, it must be material—meaning that a "reasonable person would attach importance to and would be induced to act on the information . . . in the transaction in question." *Jones v. Zearfoss*, 456 S.W.3d 618, 623 (Tex. App. 2015). These claims must be pled with particularity under Fed. R. Civ. P. 9(b). *Univ. Baptist Church of Fort Worth*, 346 F. Supp. 3d at 889 ("Claims under the Texas Deceptive Trade Practices Act are subject to Rule 9(b)").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 6, 2020, a copy of foregoing document was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the CM/ECF system.

/s/ <i>Jennifer M. Rosa</i>
Jennifer M. Rosa

737762166